UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

THOMAS GESUALDI, *et al.*,

                         Plaintiffs,

        -against-

RIZZO ASSOCIATES, INC.,

                         Defendant.

------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

21-CV-1833 (AMD)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C. Bourgal, Darin Jeffers, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Thomas F. Corbett, and Robert G. Wessels, as trustees and fiduciaries of Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, and the Local 282 Job Training Trust Fund (collectively, the "Funds"), brought this action against Defendant Rizzo Associates, Inc. alleging violations of the Employee Retirement Income Security Act of 1979, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"). (*See generally* Compl., ECF No. 1.)[1] The parties settled the claims and entered into a Consent Judgment and Limited Forbearance Agreement ("the Agreement"). On July 20, 2022, the parties filed a stipulation of dismissal without prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, which the Court so-ordered. Before the Court is Plaintiffs' motion for judgment based on settlement, alleging Defendant's default on the

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

Agreement.  (Mot., ECF No. 18.)[2]  The Honorable Ann M. Donnelly referred the motion for report and recommendation.

For reasons set forth below, the Court respectfully recommends that Plaintiffs' motion should be **granted in part**, and that judgment should be entered against Defendant as set forth herein.

I.    **BACKGROUND**

A.    **Facts**

1.    **The Complaint**

Plaintiffs are trustees and fiduciaries responsible for administrating the Funds, which are employee benefit plans and multiemployer plans within the meaning of ERISA.  (Compl., ECF No. 1 ¶ 4.)  The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for purposes of collecting and receiving contributions from employers bound to a collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union").  (*Id.* ¶¶ 3, 5–6.)  Defendant is an employer within the meaning of ERISA and the Trust Agreement.  (*Id.* ¶ 8.)

Defendant is bound to the New York City Heavy Construction and Excavation Contract for the period of July 1, 2017 through June 30, 2021 (the "2021 CBA").  (*Id.* ¶ 9.)  The 2021 CBA required Defendant to make contributions to the Funds on behalf of Defendant's employees who are covered by the CBA and to submit remittance reports to the Funds.  (*Id.*

---

[2] Plaintiffs submit a notice of the motion (Mot., ECF No. 18-1); a statement of amounts due (Stmt., ECF No. 18-2); a proposed judgment and order (Proposed Order, ECF No. 18-3); Joseph Puccio's declaration in support (Puccio Decl., ECF No. 18-4) and its seven exhibits (Puccio Decl. Exs. A to G, ECF No. 18-5); Michael S. Adler's declaration in support (Adler Decl., ECF No. 18-6) and its three exhibits (Adler Decl. Exs. A to C, ECF No. 18-7); and a memorandum of law (Mem., ECF No. 18-8).

¶¶ 10–11.)  Defendant is also bound by the Trust Agreement, which requires an employer to submit to periodic audits and allows Plaintiffs to audit the employer's books and records in connection with the employer's contributions to the Funds.  (*Id.* ¶ 15.)

Following examination of Defendant's books and records, Plaintiffs' auditor issued audit reports in March 2018 and May 2019, which reflected that Defendant owed unpaid contributions.  (*Id.* ¶¶ 28–33.)  For the period between March 26, 2018 and April 30, 2019, Defendant owed $121.56; for the period between May 1, 2019 and May 24, 2020, Defendant owed $473.82.  (*Id.* ¶¶ 28, 31.)  Beginning in March 2020, Defendant did not respond to the Funds' requests to audit its books and records.  (*Id.* ¶¶ 26–27.)  For the period from March 2019 to August 2020, Defendant submitted remittance reports but did not pay the corresponding contributions due.  (*Id.* ¶ 38.)  Defendant also failed to submit remittance reports and corresponding contributions due for the period beginning September 1, 2020. (*Id.* ¶ 39.)  Defendant did not pay the damages due for the unpaid contributions pursuant to ERISA. (*Id.* ¶¶ 43–45.)  Defendant also submitted inaccurate remittance reports that caused one Fund to pay $327.50 in benefits to Defendant's employees to which they were not entitled, but Defendant did not reimburse the Fund.  (*Id.* ¶¶ 46–53.)

By failing to remit contributions and submit its books for audit, Defendant breached the 2021 CBA and the Trust Agreement, and violated Section 515 of ERISA and Section 301 of the LMRA.  (*See id.* ¶¶ 55–70.)  Plaintiffs seek damages including delinquent contributions; estimated contributions computed under the Trust Agreement for the period from March 25, 2020 through the audit date; interest at the rate of 18% per year; interest on the delinquent contributions or liquidated damages, whichever is greater; audit costs; the unreimbursed benefits for inaccurate remittance reports; and attorneys' fees.  (*Id.* at 13–14 ¶¶ 2–6 (Prayer for

Relief).)  Plaintiffs further seek to compel Defendant to submit its books and records to audit for the period beginning March 25, 2020, and to submit any remittance reports that have not been submitted as of the date judgment is entered.  (*Id.* at 13 ¶¶ 1, 4.)

### 2.    The Agreement

On June 17, 2022, the parties entered into the Agreement, signed by Jeffers and Finkel for the Funds and Carol Rizzo, Defendant's President.  (*See* Agt., ECF No. 13-1 at 7–8.)[3]  The Agreement provides that Defendant's obligation to remit contributions to the Funds "arises from its entry into collective bargaining agreements (as well as any successor collective bargaining agreements entered into with the Union during the life of this Judgment)" with the Union and pursuant to the Trust Agreement incorporated into these collective bargaining agreements.  (*Id.* at 1–2.)

Under the Agreement, Defendant agreed to have judgment entered against it and Rizzo, in the amount of $1,253,178.09 (the "Judgment Amount"), representing amounts due pursuant to remittance reports for October 2019 through April 2022 and an audit of its books and records for the period from March 26, 2018 through April 30, 2019.  (*Id.* at 2 & ¶¶ 3–4.)[4]  However, Plaintiffs agreed to forbear enforcement of the Agreement if Defendant paid $916,337.60 (the "Satisfaction Amount").  (*Id.* at 3 ¶ 4.)  Defendant further agreed to remit the Satisfaction Amount in two lump-sum payments of $75,000 upon full execution of the Judgment and $35,055.81 in August 2022, respectively, with equal monthly installments of $35,055.73

---

[3] The Funds' signature page is undated, but Defendant's signature page is dated June 17, 2022. (ECF No. 13-1 at 9.)

[4] The paragraph numbering of the Agreement starts at "1," extends to "5," then restarts at "4." (*See* ECF No. 13-1 at 2–3.)

beginning September 1, 2022 until the Satisfaction Amount was paid in full.  (*Id.* at 3 ¶ 4(b).)

In addition to the payments required under the Agreement, Defendant was required to make

all contributions under the CBAs as they became due.  (Puccio Decl., ECF No. 18-4 ¶ 26

(citing Agt., ECF No. 13-1 ¶ 7).)

The Agreement also sets forth the circumstances that would constitute a "Default" on

its terms (the "Default Provision"):

> (a) [Defendant's] failure to tender any payment on the dates specified in this
> Judgment, (b) the failure of any payment due the Funds to clear at the Funds'
> financial institution, (c) if any payment due hereunder (in whole or in part) is
> required to be returned or turned over to [Defendant and Rizzo], jointly and
> severally, or a third-party by a court of competent jurisdiction; and/or (d)
> [Defendant's] failure to remain current in its contribution and reporting
> obligations to the Funds . . . .

(Agt., ECF No. 13-1 ¶ 11.)  The Default Provision further specifies that if Defendant failed to

"cure" the default within seven days after written notice by email and mail, the Agreement

would become immediately enforceable.  (*Id.*)  For avoidance of doubt, "Cure of Default"

means "payment of all amounts due through the cure date," including but not limited to

amounts that became due after notice of default was sent to Defendant.  (*Id.* ¶ 12.)  Further,

under the Default Provision, "the Funds may avail themselves of all remedies as provided

under applicable trust and collective bargaining agreements, in law and equity in the event of

an Uncured Default."  (*Id.* ¶ 11.)

Finally, the Agreement provides that it "constitutes an agreement within the meaning

of Section 29 U.S.C. § 1145 [*i.e.*, ERISA] and shall be enforceable in federal court and shall

be governed by, and construed in accordance with applicable federal laws."  (*Id.* ¶ 15.)

### 3.    Defendant's Noncompliance

Defendant timely remitted settlement payments totaling $180,167.27 between June 2022 and October 2022.  (Puccio Decl., ECF No. 18-4 ¶ 29.)  Plaintiffs assert that Defendant failed to remit its monthly settlement payments beginning with the payment due November 1, 2022, and continuing through January 1, 2024.  (*Id.* ¶ 30.)  Plaintiffs also claim that Defendant did not pay part of the May 2022 contributions and December 2022 through October 2023 contributions.  (*Id.*)  Plaintiffs notified Defendant of its default in various notices, including by letter dated April 19, 2023 sent by certified mail and email to defense counsel.  (Puccio Decl., ECF No. 18-4 ¶ 30; *id.* Ex. G (Default Notice), ECF No. 18-5 at 215–16.)  Plaintiffs claim that despite the notice, Defendant has not cured its default.  Plaintiffs now seek a judgment awarding them damages totaling $1,521,870.63 and audit rights.  (*See* Mem., ECF No. 18-8 at 5; Proposed Order, ECF No. 18-3.)

### B.    Procedural History

Plaintiffs initiated this suit in April 2021.  (ECF No. 1.)  The parties appeared for a Rule 16 initial conference in December 2021 and closed discovery in February 2022.  (Dec. 22, 2021 Min. Entry & Order; Feb. 23, 2022 Order.)  Plaintiff then moved for summary judgment in June 2022.  (ECF No. 12.)

On June 29, 2022, the parties jointly requested that the Court approve the Agreement (*See* ECF No. 13.)  In response, the Court directed the parties to file a stipulation of dismissal, adding that "[t]he parties may provide for the Court's retention of jurisdiction in their stipulation for the purposes of enforcing the terms of their settlement agreement."  (July 19, 2022 Order.)  On July 20, 2022, the parties filed a fully executed stipulation dismissing the action without prejudice, pursuant to Federal Rule of Civil Procedure 41 and the terms of the

Agreement.  (*See* Stip., ECF No. 15 at 1.)  The stipulation stated that "[t]he parties agree that the Court retains jurisdiction to enforce the Agreement in the event of Breach thereunder." (*Id.*)  The same day, the Court so-ordered the stipulation "without prejudice and with leave to reopen," and the case was closed.  (July 20, 2022 Order.)

In May 2023, Plaintiffs moved to reopen the case, in accordance with the Agreement's Default Provision.  (Mot. to Reopen Case, ECF No. 16.)  After the Court granted that motion, in January 2024, Plaintiffs filed the instant motion.  (Nov. 14, 2023 Order; Mot., ECF No. 18.) Judge Donnelly referred the motion for report and recommendation.  (Mar. 28, 2024 Order Ref. Mot.)

The Court directed all counsel and a corporate representative for Defendant to appear for a hearing.  (July 24, 2024 Scheduling Order.)  By letter dated August 5, 2024, defense counsel advised the Court that Defendant ceased operations and that Rizzo was "in ill health." (Def.'s Ltr., ECF No. 21.)  On August 7, 2024, the parties appeared, including Rizzo's Power of Attorney.  (Aug. 7, 2024 Min. Entry.)  Defense counsel explained Defendant's efforts to resolve the delinquent payments, but ultimately conceded Defendant's default.  (Aug. 7, 2024 Hr'g Tr. ("Tr."), ECF No. 22 at 14:17–16:11.)  Rizzo's Power of Attorney was not involved with Defendant's business and did not contest default.  (*Id.* at 11:15–22.)  To date, Defendant has not opposed Plaintiffs' motion for judgment.

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

"A federal court does not automatically retain jurisdiction to hear a motion to enforce or otherwise apply a settlement in a case that it has previously dismissed."  *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 304–05 (2d Cir. 2014) (quoting *In re Am. Express Fin. Advisors Sec.*

*Litig.*, 672 F.3d 113, 134 (2d Cir. 2011), which cites *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–82 (1994)).  "[T]here are only two ways in which a district court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: [1] it may 'expressly retain jurisdiction over enforcement of the agreement' in an order of the court, or [2] it may 'incorporate . . . the terms of that agreement' in such an order."  *Hendrickson v. United States*, 791 F.3d 354, 360 (2d Cir. 2015) (quoting *StreetEasy*, 752 F.3d at 305). Additionally, "[w]hen a district court lacks ancillary jurisdiction over the enforcement of a settlement agreement, 'enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.'"  *Id.* at 362 (quoting *Kokkonen*, 511 U.S. at 382).

Here, the Court expressly retained jurisdiction over enforcement of the Agreement in an order.  Specifically, the Court so-ordered the parties' executed stipulation of dismissal, which stated that "[t]he parties agree that the Court retains jurisdiction to enforce the Agreement in the event of Breach thereunder."  (*See* Stip., ECF No. 15 at 1 & July 20, 2022 Order.)  Furthermore, the Court ordered dismissal "without prejudice and with leave to reopen."  (*See* July 20, 2022 Order.)  For these reasons, the Court has the authority to enforce the terms of the Agreement.

## B.    Liability

"A settlement agreement is a contract that is interpreted according to general principles of law."  *Powell v. Omnicon*, 497 F.3d 124, 128 (2d Cir. 2007).  "However, where the settlement agreement calls for entry of judgment and identifies the basic forms of relief but not the precise language of the judgment, the Court 'is obliged to determine' the details and wording of the judgment."  *Gesualdi v. PAV-CO Asphalt, Inc.*, No. 09-CV-2503 (ARR)(JMA),

2011 WL 2433731, at *2–3 (E.D.N.Y. May 23, 2011) (quoting *Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir.1986)), *adopted by* 2011 WL 2416381 (E.D.N.Y. June 14, 2011). "In determining the details of the judgment, the Court 'may not award whatever relief would have been appropriate after an adjudication on the merits, but only those precise forms of relief that are either agreed to by the parties . . . or fairly implied by their agreement.'" *PAV-CO Asphalt*, 2011 WL 2433731 at *3 (quoting *Janus*, 801 F.2d at 582).

Here, Plaintiffs have established that Defendant defaulted on the agreed-upon payments and failed to cure its default under the Agreement. In the Agreement, Defendant agreed to pay the Satisfaction Amount pursuant to a payment plan or, upon default, the higher Judgment Amount in full. (Agt., ECF No. 13-1 ¶¶ 4, 5.) Instead, the Funds' records reflect that since entering into the Agreement, Defendant remitted only a total of $180,167.27 in payments from July to October 2022, far less than the agreed-upon Satisfaction Amount of $916,337.60, and did not remain current on contribution obligations under the CBAs. (Puccio Decl., ECF No. 18-4 ¶¶ 29–30.) The Funds notified Defendant of its default in accordance with the Default Provision and warned Defendant that upon its failure to cure default within 7 days, "the Funds will enforce the [Agreement] and will seek the full amount entitled to them." (Default Notice, ECF No. 18-5 at 215–16; *see* Agt., ECF No. 13-1 ¶¶ 11, 13.) Defendant has not remitted any settlement payments since October 2022 and concedes that no payments are forthcoming. (*See* Puccio Decl., ECF No. 18-4 ¶¶ 29–30; *see* Tr., ECF No. 22 at 14:17–15:14.)

Moreover, additional relief for default beyond the Judgment Amount is "fairly implied" by the Agreement. *See PAV-CO Asphalt*, 2011 WL 2433731 at *3. Specifically, the Default Provision states that, "the Funds may avail themselves of all remedies as provided under applicable trust and collective bargaining agreements, in law and equity in the event of an

9

Uncured Default." (Agt., ECF No. 13-1 ¶ 11.)  The parties also agreed that the Judgment "shall not limit or restrict the amount owed by [Defendant], or any of the remedies available to the Funds under any other agreements with [Defendant], or any agreements with other parties or pursuant to applicable laws," and that the "Judgment may not cover all monies owed [to] the Funds."  (*Id.* ¶ 17.)  Furthermore, the Agreement affirms Defendant's continuing obligations under the CBA to "accurately and timely report to the Funds all contribution amounts as they become due[.]  (*Id.* ¶ 7.)  It also preserves the Funds' right to audit Defendant's books and records "for all unaudited periods, including for periods covered by this Judgment, and to collect all contribution delinquencies identified by said audits, and to collect all contribution delinquencies identified by said audits."  (*Id.* ¶ 10.)

The Agreement also incorporates by reference the Trust Agreement, which sets forth Defendant's contribution obligations pursuant to the CBA and Plaintiffs' authority to collect contributions.  The Trust Agreement requires that "[e]ach and every Employer shall pay to the Trustees the Employer Contributions," promptly by the due date established in the CBA, or if no due date is set, "on the 30th day of each month covering all payroll periods during the preceding calendar month."  (Puccio Decl. Ex. A (Trust Agt.), ECF No. 18-5 at 25, Art. IX §§ 1(a)–(b).)  Defendant's failure to pay the contributions promptly when due "shall be a violation of the [CBA] . . . as well as a violation of the Employer's obligations [under the Trust Agreement]."  (*Id.* at 28, Art. IX § 3.)  The Trust Agreement explicitly authorizes the Trustees to "demand, collect, and receive contributions and retain service providers or professionals to collect fund delinquencies . . . for the purposes specified in this Agreement."  (*Id.* at 27–28, Art. IX § 2.)  Moreover, the Trustees are "authorized and empowered to take whatever proceedings may be proper and necessary in their discretion for enforcement of Employer's

obligations including but not limited to proceedings at law and in equity and arbitration and any remedies[.]" (*Id.* at 29, Art. IX § 4.)

These provisions are consistent with Section 515 of ERISA, which provides that an employer who is "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at \*3 (E.D.N.Y. Aug. 10, 2022).

The record establishes Defendant's liability pursuant to the Agreement, the 2021 CBA, the 2026 CBA, and the Trust Agreement.  (Agt., ECF No. 13-1 at 1–2.)  *First,* Defendant is bound by the 2021 CBA for the time period between July 1, 2017 through June 30, 2021.  (Compl., ECF No. 1 ¶ 9; Puccio Decl., ECF No. 18-4 ¶ 13; *see* Puccio Decl. Ex. B (2021 CBA), ECF No. 18-5 at 57–99.)  Defendant acknowledges in the Agreement that its obligation to remit contributions "arises from its entry into collective bargaining agreements (as well as any successor collective bargaining agreements . . . ) entered into with the Union," or Building Material Teamsters Local 282, which is a signatory to the 2021 CBA.  (Agt., ECF No. 13-1 at 1; 2021 CBA, ECF No. 18-5 at 94.)  Moreover, the parties stipulated that the Judgment relates to Defendant's obligations arising from March 2018 through April 2019 and from October 2019 through April 2022, which are covered time periods under the 2021 CBA.  (Agt., ECF No. 13-1 at 2.)  *Second*, Defendant is also bound by the Trust Agreement because the 2021 CBA provides that the Trust Agreement is "hereby made a part of [the CBA] with the same force and effect as if fully incorporated herein, and the Employer and the Union hereby agree

that upon the execution of this Agreement they shall be deemed parties to said Trust Agreement[.]"  (2021 CBA, ECF No. 18-5 at 81–82, Section 13(G).)  *Finally*, Defendant is further bound by the 2026 CBA with the Union for the period between July 1, 2021 through June 30, 2026.  Pursuant to the Trust Agreement, "[i]f the Employer makes contributions at the rates stated in the current [CBA] applicable to its Industry, then Employer shall be deemed a party to that current [CBA], and shall be obligated to make timely contributions to each Fund as set forth in that [CBA]."  (Trust Agt., ECF No. 18-5 at 25, Art. IX § 1(a); *see* Puccio Decl. Ex. C (2026 CBA), ECF No. 18-5 at 100–42.)  As noted, Defendant reported contributions to the Funds at the applicable rates prescribed under the 2026 CBA for over one year, including May 2022 to June 2023.  (Mem., ECF No. 18-8 at 10; Puccio Decl., ECF No. 18-4 ¶¶ 15–18 (citing Puccio Decl. Ex. D (Rate Sheets), ECF No. 18-5 at 144–47).)  These reports and contributions thus bind Defendant to the 2026 CBA pursuant to the Trust Agreement.

Plaintiffs allege that Defendant failed to make contributions, submit remittance reports, and submit to periodic audits pursuant to its obligations under the Trust Agreement and the CBAs.  (Compl., ECF No. 1 ¶¶ 27, 30, 34, 37, 41; Puccio Decl., ECF No. 18-4 ¶¶ 34, 39, 42.)  In other words, by failing to fulfill these obligations, Defendant further violated the Agreement into which the Trust Agreement and the CBAs were incorporated by reference.

Based on the foregoing, the Court respectfully recommends that Defendant should be liable for breach of the Agreement.

### C.    Damages

Plaintiffs seek the following damages pursuant to the Agreement, which incorporates the Trust Agreement and ERISA: (1) the unpaid Judgment Amount; (2) confirmed unpaid contributions; (3) estimated unpaid contributions; (4) interest on all unpaid contributions; (5)

liquidated damages; and (6) attorneys' fees.  (Mem., ECF No. 18-8 at 11–17; Proposed Order, ECF No. 18-3.)  Plaintiffs also seek to preserve their audit rights.  (Mem., ECF No. 18-8 at 17; Proposed Order, ECF No. 18-3.)  To support these requests, Plaintiffs rely on the declarations of Joseph Puccio, a member of the Collections Department of the Funds (Puccio Decl., ECF No. 18-4),[5] and Michael S. Adler, Plaintiffs' counsel (Adler Decl., ECF No. 18-6), along with supporting exhibits.

### 1.   Unpaid Judgment Amount

Plaintiffs seek payment of $1,073,010.82 for the unpaid Judgment Amount under the Agreement.  (Mem, ECF No. 18-8 at 12; Proposed Order, ECF No. 18-3 ¶ 1(a).)  As noted, the Default Provision entitles Plaintiffs to immediate enforcement of the Agreement's Judgment Amount.  (Agt., ECF No. 13-1 ¶¶ 11.)  Plaintiffs correctly calculate the principal balance due by subtracting the amounts Defendant paid from the Judgment Amount (*i.e.*, $1,253,178.09 minus $180,167.27).  Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$1,073,010.82** as the principal balance due under the Agreement.

### 2.   Unpaid Contributions

### a.   Confirmed Unpaid Contributions

Plaintiffs seek $99,731.91 in confirmed unpaid contributions for May 2022 and December 2022 through June 2023.  (Mem., ECF No. 18-8 at 12; Proposed Order, ECF No. 18-3 ¶ 1(b).)

---

[5] Puccio is a member of the Funds' Collections Department and is responsible for monitoring and overseeing collection of contributions from employers, including Defendant, to ensure that they timely and accurately contribute to the Funds.  (Puccio Decl., ECF No. 18-4 ¶¶ 1–4, 8.)  The Collections Department also demands payment from employers who fail to submit contributions, including any interest and payment of any settlement amounts, refers matters to counsel, and assists with litigation.  (*Id.* ¶¶ 5–7.)

The Trust Agreement provides that if Defendant fails to remit contributions by the date due, Defendant is liable to the Funds for "(i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs."  (Compl., ECF No. 1 ¶ 13; Trust Agt., ECF No. 18-5 at 28, Art. IX § 3.)  This is consistent with ERISA, which awards the following damages when an employer fails to make required contributions: "(a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; and (e) other relief the court deems appropriate." *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER), 2020 WL 9814085, at *4 (E.D.N.Y. Feb. 25, 2020) (citing 29 U.S.C. § 1132(g)(2)), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER) (E.D.N.Y. Mar. 21, 2020)).

As set forth in Puccio's declaration, Defendant submitted remittance reports but failed to remit $99,731.91 in corresponding contributions that Defendant reported for May 2022 and December 2022 through June 2023.  (Puccio Decl., ECF No. 18-4 ¶ 34 (citing Puccio Decl. Ex. E (Remittance Reports), ECF No. 18-5 at 147–204).)  The Court has reviewed the underlying remittance reports and finds that Puccio's calculations accurately reflect the amounts due except for May 2022.[6]  According to the remittance reports, Defendant reported

---

[6] The amounts listed for December 2022 through June 2023 are accurate.  (Puccio Decl. Ex. E, ECF No. 18-5 at 199 (reports showing $17,545.00 for December 2022); *id.* at 184 (showing

$18,745.14 for May 2022 contributions and paid in full, albeit late, on November 2, 2022. (Remittance Reports, ECF No. 18-5 at 163 (remittance report showing $18,745.14 for May 2022).) Notwithstanding this payment, Puccio states that Defendant still owes $0.50 for May 2022, with no explanation of how Plaintiffs arrived at this number. (Puccio Decl., ECF No. 18-4 ¶ 34.) Therefore, the Court will rely on the remittance reports provided by Plaintiffs to reduce the confirmed unpaid contributions award by $0.50. *Trs. of Elevator Constructors Union Loc. No. 1 Annuity & 401(k) Fund v. Keystone Iron & Wire Works, Inc.*, No. 16-CV-239 (KAM)(LB), 2017 WL 9487195, at *4 & n.3 (E.D.N.Y. Jan. 30, 2017), *adopted by* 2017 WL 1194467 (E.D.N.Y. Mar. 31, 2017) (reducing unpaid contributions award by $2.97 after calculating amounts using rates and total hours reflected in remittance reports).

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$99,731.41** (not $99,731.91 as requested) in confirmed unpaid contributions for December 2022 through June 2023 only.

### b.    Estimated Unpaid Contributions

Plaintiffs seek $108,832.48 in estimated unpaid contributions for July 2023 through October 2023. (Mem., ECF No. 18-8 at 12–13; Proposed Order, ECF No. 18-3 ¶ 1(c).)

Pursuant to the Trust Agreement, if an employer "fails to submit the required reports and/or pertinent books and records for audit within twenty (20) days of written demand," the employer must pay an increased monthly contribution. (Trust Agt., ECF No. 18-5 at 26–27, Art. IX, § 1(e).) The Trust Agreement establishes the formula by which a liable employer's

---

$12,085.96 for January 2023); *id.* at 187 (showing $10,445.14 for February 2023); *id.* at 190 (showing $20,723.19 for March 2023); *id.* at 193 (showing $15,898.89 for April 2023); *id.* at 196 (showing $10,986.76 for May 2023); *id.* at 202 (showing $12,046.47 for June 2023).

increased monthly contribution amount is determined.  (*Id.*)  Specifically, the amount is computed by "adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or [fifty-two] (52) weeks (or any combination thereof) for which reports reflecting at least one hour of covered work performed were submitted by" Defendant.  (*Id.*; Puccio Decl., ECF No. 18-4 ¶ 36.)  The total number of covered hours is multiplied by the then-current contribution rates to determine the employer's liability for monthly contributions.  (Trust Agt., ECF No. 18-5 at 26–27, Art. IX, § 1(e).)

Applying this method, because Defendant failed to submit remittance reports between July 2023 and October 2023, Plaintiffs first reviewed the remittance reports for the 12-month period from July 2022 through June 2023 (*i.e.*, 12 months before July 2023).  (Puccio Decl., ECF No. 18-4 ¶¶ 35, 37.)  Plaintiffs determined that August 2022 had the most hours reported, added 10% to those hours, then multiplied by the then-hourly contribution rate to calculate the estimated unpaid calculations.  (*Id.* ¶ 38; *see also* Rate Sheets, ECF No. 18-5 at 143–46.)  For example, for the Welfare Fund contributions due, Plaintiffs added 10% to the 429.5 hours for August 2022 to arrive at 472.45 estimated hours for August 2023.  (Puccio Decl., ECF No. 18-4 ¶ 38.)  Plaintiff multiplied this number by the $19.55 hourly contribution rate as stated in the Rate Sheet effective July 1, 2023.  (Rate Sheets, ECF No. 18-5 at 145.)  As a result, Defendant's estimated contributions due to the Welfare Fund for August 2023 totals $9,236.40. (Puccio Decl., ECF No. 18-4 ¶ 38.)  The Court has reviewed Plaintiffs' remaining calculations for unpaid estimated contributions and finds them to be accurate.  (*Id.* ¶¶ 37–38.)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$108,832.48** in estimated unpaid contributions for July 2023 through October 2023.

### 3.    Interest

Plaintiffs request a total of $151,235.18 in interest, plus $344.88 daily interest commencing on January 13, 2024.  (Mem., ECF No. 18-8 at 13; Proposed Order, ECF No. 18-3, ¶ 1(d); Adler Decl., ECF No. 18-6 ¶ 54.)  These totals are broken down as follows: (1) $126,292.83 on Defendant's default on the Agreement plus $242.03 in per diem interest (Adler Decl., ECF No. 18-6 ¶¶ 42–43); (2) $12,086.04 on confirmed unpaid contributions plus $49.18 in per diem interest (*id.* ¶¶ 49–50); (3) $3,971.64 on estimated unpaid contributions, plus $53.67 in per diem interest (*id.* ¶¶ 51–52); and (4) $8,884.67 on late-paid contributions (*id.* ¶ 53).

#### a.    Interest for Default on the Agreement

The Agreement provides that "interest at a 12% rate will accrue on all balances due under [the Agreement] until all such amounts are paid."  (Agt., ECF No. 13-1, ¶ 8.)

Plaintiffs calculate the interest for default on the Agreement by (1) multiplying the settlement balance due under the Agreement by 12%, (2) multiplying that figure by the number of days between the payment due date and date paid (if unpaid, the date on which interest was calculated), and (3) dividing that amount by 365.  (*See* Adler Decl., ECF No. 18-6 ¶ 40.)  For example, Defendant agreed to pay $75,000 by June 17, 2022 as a down payment on the Satisfaction Amount.  (Agt., ECF No. 13-1 at 3 ¶ 4.)  If Defendant had paid on time, the settlement balance would have been $841,337.60.  (Adler Decl., ECF No. 18-6 ¶ 42.)  Instead, Defendants paid on July 25, 2022, or 28 days late.  (*Id.*)  Plaintiffs calculate the interest by multiplying the June 17, 2022 balance by 12%, multiplying that by 28 days, and then dividing by 365 (*i.e.*, (($841,337.60 x 0.12 x 28) / 365)), for a total of $7,744.92 in interest for the June 2022 late payment.  Plaintiffs apply this calculation for all late payments through January 12,

2024, resulting in a total of $126,292.83 in interest. (*Id.*) For the daily interest rate accruing on or after January 13, 2024, Plaintiffs multiply the balance due as of January 12, 2024 by 12%, then divide by 365 (*i.e.*, (($736,170.33 x 0.12) / 365)) for a per diem interest of $242.03. (*Id.* ¶ 43.) The Court has reviewed these calculations and finds them to be correct.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded $126,292.83 in interest on the unpaid balance on Defendant's default on the Agreement, from November 1, 2022 through January 12, 2024, plus $242.03 in per diem interest starting on January 13, 2024.

### b.    Interest for Confirmed Unpaid Contributions, Estimated Unpaid Contributions, and Late-Paid Contributions

In addition, Plaintiffs request interest accruing for the "unpaid, estimated and late-paid contributions." (Mem., ECF No 18-8 at 13; Adler Decl., ECF No. 18-6 ¶¶ 44–54.)

Pursuant to the Trust Agreement, interest is calculated at a rate of 1.5% per month of each monthly amount due for each month, or 18% per year. (Trust Agt., ECF No. 18-5 at 28, Art. IX, § 3; Adler Decl., ECF No. 18-6 ¶¶ 44–46.) *See also* 29 U.S.C. § 1132(g)(2) ("interest on unpaid contributions shall be determined by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986.").

Plaintiffs use the same formula to calculate interest for confirmed and estimated unpaid contributions, as well as the late-paid contributions. Specifically, Plaintiffs calculate the interest by (1) taking 18% of the monthly contribution amount, (2) dividing that number by 365 days to determine the per diem interest rate, and (3) multiplying the daily interest rate by (a) the number of days between the first day of the month in which contributions were due,

and (b) if still unpaid, the date the interest calculation was performed (*i.e.*, January 12, 2024), or (c) if paid late, the date of payment.  (Adler Decl., ECF No. 18-6 ¶ 47.)

For example, for the confirmed unpaid contributions, Defendant owe $17,545.00 for December 2022 contributions.  (*Id.* ¶ 49.)  According to Plaintiffs, because interest started to accrue on February 14, 2023 and the interest calculation date was January 12, 2024 (*i.e.*, the date the calculations were performed), the number of days late is 332 days.  (*Id.*)  Plaintiffs calculate the interest by multiplying $17,545.00 by 18%, dividing by 365, then multiplying by 332 days (*i.e.*, (($17,545.00 x 0.18) / 365) x 332), and therefore, the interest due for December 2022 is $2,872.57.  (*Id.*)  The same method applies for both estimated unpaid contributions as well as late-paid contributions.  (*See id.* ¶¶ 51–53.)

The Court has reviewed the calculations and finds them to be correct, with the exception of confirmed unpaid contributions for May 2022 as discussed above.  (*See* § II.C.2.a, *supra*.)  For May 2022, Defendant paid the contributions owed ($18,745.14), albeit months later on November 2, 2022.  (Adler Decl., ECF No. 18-6 ¶ 32; Remittance Reports, ECF No. 185 at 163.)  Plaintiffs assert that Defendant owes $0.13 in interest for $0.50 in unpaid contributions for May 2022, without explanation for how they arrived at the $0.50.  (Adler Decl., ECF No. 18-6 ¶ 49.)  Further, any interest on this late payment is already accounted for by the paid-late interest amount of $8,884.67.  (Adler Decl., ECF No. 18-6 ¶ 53.)  As with the unexplained $0.50 owed for May 2022, the Court will not include the proposed $0.13 interest owed for May 2022 in the total calculation.  *See Keystone Iron & Wire Works*, 2017 WL 9487195, at *4 & n.3.  Accordingly, the requested interest amount for confirmed unpaid contributions should be reduced by $0.13.

Based on the Court's review, Plaintiffs should be awarded interest for contributions as follows: (1) $12,085.91 (not $12,086.04 as requested) for confirmed unpaid contributions plus $49.18 in per diem interest; (2) $3,971.64 for estimated unpaid contributions plus $53.67 in per diem interest; and (3) $8,884.67 on late-paid contributions.

*    *    *

Therefore, in total, the Court respectfully recommends that Plaintiffs should be awarded **$151,235.05** in interest and **$344.88** in per diem interest commencing on January 13, 2024 to the entry of judgment.

### 4.    Liquidated Damages

Plaintiffs also seek $76,808.74 in liquidated damages as follows: (1) $19,946.41 on confirmed unpaid contributions; (2) $21,766.48 on estimated unpaid contributions; and (3) $35,095.85 for late-paid contributions.  (Mem., ECF No. 18-8 at 14; Proposed Order, ECF No. 18-3, ¶ 1(e); Adler Decl., ECF No. 18-6 ¶¶ 56–59.)

The Trust Agreement provides that upon Defendant's failure to promptly pay the contributions, the Funds are entitled to interest, "together with attorneys' fees, auditor's fees and liquidated damages[.]"  (Trust Agt., ECF No. 18-5 at 29, Art. IX, § 3.)  Specifically, Defendant shall pay "additional damages equal to the greater of: (1) the amount of interest charged on the unpaid contributions, or (2) liquidated damages in the form of 20 percent of the unpaid contributions."  (*Id.*, Art. IX, § 3(c); Adler Decl., ECF No. 18-6 ¶ 55.)  This provision is consistent with ERISA, which provides for an award of liquidated damages in an amount "equal to the greater of (i) interest on the unpaid contributions," or (ii) "provided for under [an employee benefit] plan in an amount not in excess of 20 percent of unpaid contributions."  29 U.S.C. § 1132(g)(2)).

Pursuant to these provisions, Plaintiffs first determine whether the amount of interest charged on the unpaid contribution is higher than 20% of the unpaid contributions.  If it is, then Plaintiffs multiply the unpaid contribution owed per month by 20% to calculate the liquidated damages per month.  (Adler Decl., ECF No. 18-6 ¶ 56.)  For example, for the December 2022 unpaid contributions, Plaintiffs determined that the calculated interest of $2,872.57 was lower than 20% of $17,545.00, which is $3,509.00 (*i.e.*, ($17,545.00 x 0.20).) (*Id.* ¶ 56.)  Therefore, the liquidated damages amount would be $3,509.00 for December 2022. Plaintiffs apply the same method for both estimated unpaid contributions and late-paid contributions.  (*Id.* ¶¶ 57–58.)

In regard to unpaid contributions, the Court has reviewed the calculations and finds them to be correct, with the exception of confirmed unpaid contributions for May 2022 as discussed above.  (*See* §§ II.C.2.a & II.C.3.b, *supra*.)  For May 2022, Defendant made a late payment on the contributions owed ($18,745.14) on November 2, 2022.  (Adler Decl., ECF No. 18-6 ¶ 32; Remittance Reports, ECF No. 185 at 163.)  Without any explanation from Plaintiffs to justify the additional unpaid contribution of $0.50 for May 2022, the Court will not award any liquidated damages that flow from this amount owed in the total calculation. *See Keystone Iron & Wire Works, Inc.*, 2017 WL 9487195, at *4 & n.3.  Accordingly, for confirmed unpaid contributions, the requested liquidated damages for confirmed unpaid contributions should be reduced by $0.13.  For estimated unpaid contributions, the Court has reviewed the calculations and deems the requested amount of $21,766.48 to be correct.  (Adler Decl., ECF No. 18-6 ¶ 57.)

On the other hand, Plaintiffs are not entitled to liquidated damages for late-paid contributions.  While ERISA permits liquidated damages on unpaid contributions, it does not

permit liquidated damages on late-paid contributions unless provided by the CBA. *Gesualdi v. Loriann Trucking Co.*, No. 11-CV-5984 (FB)(JO), 2012 WL 3887205, at *8 (E.D.N.Y. July 27, 2012), *adopted by* 2012 WL 3887170 (E.D.N.Y. Sept. 6, 2012); *see also Gesualdi v. Torretta Trucking Inc.*, 2012 WL 1102803, at *6 (E.D.N.Y. Mar. 12, 2012) ("[A]ny liability for liquidated damages for these late-paid contributions must stem from one of the labor agreements."), *adopted by* 2012 WL 1103179 (Apr. 2, 2012). A careful review of the Trust Agreement and the CBAs before the Court shows no provision that allows for such damages. The Trust Agreement only expressly permits liquidated damages for unpaid contributions. (*See* Trust Agt., ECF No. 18-5 at 29, Art. IX, § 3(c)(2).) Plaintiffs rely on a 2006 case in this Court, *LaBarbera v. David Liepper & Sons, Inc.*, No. CV-06-1371(DLI)(JMA), 2006 WL 2423420, at *4 (E.D.N.Y. July 6, 2006), to justify liquidated damages on late-paid contributions. (Mem., ECF No. 18-8 at 14.) However, the Court is persuaded by subsequent cases that analyzed similarly-worded liquidated damages provisions in trust agreements and denied liquidated damages under ERISA. *See, e.g.*, *Loriann Trucking Co.*, 2012 WL 3887205, at *8; *see Torretta Trucking Inc.*, 2012 WL 1102803, at *6; *Gesualdi v. D & E Top Soil & Trucking Inc.*, No. CV 11-5938 (NG)(MDG), 2013 WL 1729269, at *5 (E.D.N.Y. Mar. 26, 2013), *adopted by* 2013 WL 1728893 (E.D.N.Y. Apr. 22, 2013); *see also Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 289 (E.D.N.Y. 2010) (limiting liquidated damages award only to contributions that were "unpaid at the time this suit was commenced and for those that accrued during the litigation but remain unpaid"); *see also id.* at 283 n.5. Therefore, the Court respectfully recommends denial of liquidated damages on late-paid contributions made for May 2022 through November 2022.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$41,712.76** (not $76,808.74 as requested) in liquidated damages as follows: (1) $19,946.28 for confirmed unpaid contributions and (2) $21,766.48 for estimated unpaid contributions.

### 5.    Attorney's Fees

Plaintiffs request $12,251.50 in attorney's fees for work performed from July 2022 to January 2024 to enforce the terms of the Agreement.  (Mem., ECF No. 18-8 at 14–17; Proposed Order, ECF No. 18-3, ¶ 1(f); Adler Decl. Ex. C (Billing Records), ECF No. 18-7 at 31–49.)

Pursuant to the Agreement, Defendant agreed that it would pay "any attorney's fees and costs incurred by the Funds in connection with administration and enforcement of [the Agreement]."  (Adler Decl., ECF No. 18-6, ¶ 21 (citing Agt., ECF No. 13-1, ¶ 9)).  *See also* 29 U.S.C. § 1132(g)(2)(D) (allowing for an award of reasonable attorneys' fees and costs). "Administration" of the Agreement includes, but is not limited to, "any action taken in response to a Default" as defined in the Default Provision, including "providing notice of a Default, communications with [Defendant and Rizzo] and/or their counsel regarding any Default or cure of a Default, and conferring with the Funds on whether a default has occurred." (Agt., ECF No. 13-1 ¶ 9.)  Similarly, "enforcement" of the Agreement means "any steps taken in connection with enforcement efforts in the event of an Uncured Default . . . ."  (*Id.*) Counsel's activities reflected in the billing records are consistent with these definitions. (Billing Records, ECF No. 18-7 at 31–49.)

District courts have broad discretion to determine the amount of attorneys' fees. *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One*

*Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 7390362, at \*9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by* 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).  In the Second Circuit, courts calculate a "presumptively reasonable fee" by examining the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by a case. *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*9.  To determine a reasonable hourly rate, the Court looks to the hourly rates that attorneys charge for comparable work.  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at \*4 (E.D.N.Y. Sept. 28, 2023), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of the hours spent and the rates charged."  *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*10.  A request for attorney's fees must include contemporaneous time records that specify for each attorney, the hours expended and the nature of the work done.  *Regal USA Concrete*, 2023 WL 7413837, at \*3.  "In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours."  *Cape Mount Heavy Constr.*, 2023 WL 5830338, at \*11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### a.    Hourly Rate

Plaintiffs request attorneys' fees based on the following hourly rates:  (1) $305 in 2022 and $325 in 2023 for attorney Michael S. Adler, who is the lead partner on the case with substantial experience in ERISA litigation; (2) $280 in 2022 for attorney Ross Pollack, as associate with at least five years of experience working as in-house counsel; (3) $110 in 2022 and $115 in 2023 for George T. Kramer, as a paralegal who has been working at Plaintiffs'

counsel's firm since 2002.  (Adler Decl., ECF No. 18-6, ¶¶ 64, 66; Billing Records, ECF No. 18-7 at 30–49.)

The ordinary rates for attorneys in the Eastern District of New York are approximately $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 per hour for junior associates. *Cape Mount Heavy Constr. & Assocs.*, 2023 WL 5830338, at *11.  Courts have also awarded up to $150 for non-attorney support staff. *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618, at *9 (E.D.N.Y. Sept. 12, 2023), *adopted by*, 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023) (collecting cases).  The requested hourly rates for Adler, who has extensive ERISA litigation experience and has handled over 250 ERISA cases, are within the accepted range for partners.  (Adler Decl., ECF No. 18-6 ¶ 66.)  The rate for Pollack, who joined Plaintiffs' firm in 2022 after serving five years as in-house counsel to various Taft-Hartley benefit plans, is also within the reasonable range for senior associates in ERISA litigation.  (*Id.*)  Finally, Kramer's rates as a paralegal are also below the $150 rate awarded for non-attorney support staff.  Therefore, the Court finds that the requested hourly rates are reasonable and consistent with the range of rates awarded for ERISA litigation in this district.

### b.    Reasonable Hours Expended

Counsel requests attorneys' fees based on a total of 39.4 hours.  (Adler Decl., ECF No. 18-6, ¶ 64.)  Plaintiffs have submitted contemporaneous time records that detail the work performed by their counsel and the time spent—specifically: (1) 37.6 hours of work performed by attorney Adler; (2) 0.4 hours by attorney Pollack; and (3) 1.4 hours performed by paralegal Kramer.  (*Id.*; Adler Decl., Ex. C, ECF No. 18-7 at 30–49.)  After a careful review of the

records, the Court finds the billed activities to be reasonable and not excessive, redundant, or unnecessary because Plaintiffs spent nearly two years attempting to enforce the Agreement, including ongoing written and telephone communication with defense counsel and the Funds regarding status of payments. *Cf. PAV-CO Asphalt*, 2011 WL 2433731, at *5 (recommending attorneys' fees for 5.4 hours billed over two-month period on motion to enforce judgement); *Gesualdi v. BD Haulers Inc.*, No. 09-CV-448 (RRM)(RER), 2009 WL 5172859, at *6 (E.D.N.Y. Dec. 22, 2009) (approving attorneys' fees for 10.6 hours expended for 2.5-month period to enforce settlement after defendant's default). Therefore, in light of the circumstances of this case, the hours expended by Plaintiffs' counsel are reasonable.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$12,251.50** in attorney's fees.

### 6.    Audit Rights

In addition to monetary damages, Plaintiffs seek to preserve all audit rights, including for periods covered by the Settlement Agreement, and request a "mandatory injunction" directing Defendant to submit to audits. (Mem., ECF No. 18-8 at 17; Proposed Order, ECF No. 18-3 at 2.)

The Agreement provides that the "Funds preserve the right to audit [Defendant's] books and records for all unaudited periods, including for periods covered by this Judgment[.]" (Agt., ECF No. 13-1 ¶ 10.) Likewise, the Trust Agreement permits the Funds to "at any time audit the pertinent books and records of [Defendant]." (Trust Agt., ECF No. 18-5 at 26, Art. IX. § 1(d).) The Trust Agreement explicitly defines the records to include "(1) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record; (2) payroll tax records submitted to federal and state governments, including Forms 941 and

W-2; (3) complete business income tax returns; (4) cash disbursement records; (5) general ledgers; (6) records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and (7) any other records specifically requested by the Funds' auditors . . . [.]"   (*Id.*)   Further, the Trust Agreement gives Plaintiffs discretion to "apply for and be entitled to a mandatory injunction directing [Defendant] to produce its said books and records for audit."   (*Id.* § 1(f).)

The Supreme Court has recognized a trustee's authority to conduct audits pursuant to a trust agreement to be permissible and consistent with the general policies behind ERISA.  *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985) ("An examination of the structure of ERISA in light of the particular duties and powers of trustees under the common law leaves no doubt as to the validity and weight of the audit goals[.]"); *see also New York State Nurses Ass'n Benefits Fund through Buchanan v. Nyack Hosp.*, 46 F.4th 97, 105 (2d Cir. 2022) (applying *Central States* to determine that a fund governed by ERISA is entitled to require participating employers to submit to contractually permitted audits). Courts have permitted audit of payroll records to be "well within the authority of the trustees as outlined in the trust documents."  *Cent. States*, 472 U.S. at 581.  "[O]nce the trustees and the employer have agreed in advance to the scope of an audit the trustees are authorized to conduct, it is not generally for either the employer or the district court to draw [] lines and to determine which payroll records . . . are truly necessary for the audit."  *Nyack Hosp.*, 46 F.4th at 115.

Here, both the Agreement and the Trust Agreement explicitly authorize Defendant to request audit of Defendant's books and records and outlines the categories of records subject to audit.   (Agt., ECF No. 13-1 ¶ 10; Trust Agt., ECF No. 18-5 at 26, Art. IX. § 1(d).)

Defendant has not submitted any opposition to Plaintiffs' request to preserve their audit rights nor challenged the scope of the records for audit.  Accordingly, the Court respectfully recommends that Plaintiffs should have their audit rights preserved pursuant to the Agreement, the Trust Agreement, and under the general policies of ERISA.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for judgment at ECF No. 18 should be **granted in part** as follows: (1) the proposed judgment and order at ECF No. 18-3 (as amended)[7] should be entered against Defendant; (2) Plaintiffs should be awarded **$1,486,774.02**, which consists of: (a) $1,073,010.82 as principal balance due pursuant to the Agreement, (b) $99,731.41 in confirmed unpaid contributions, (c) $108,832.48 in estimated unpaid contributions, (d) $151,235.05 in interest (plus per diem interest of $344.88 commencing January 13, 2024 through date of judgment), (e) $41,712.76 in liquidated damages, and (f) $12,251.50 in attorneys' fees; and (3) Plaintiffs' audit rights should be preserved.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Donnelly.  If a

---

[7] Plaintiffs' proposed judgment and order (ECF No. 18-3) should be amended to reflect the damages recommendations herein.

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 11, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge